## CAMPBELL v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 8, 1915.)

No. 2384.

1. CRIMINAL LAW ☞865—VERDICT—COERCING AGREEMENT.
    A verdict returned after the jury had deliberated for 48 hours was not coerced by the court, though after the foreman had stated that the jury was unable to agree the court directed them to consider the case further, especially where accused made no objection to such direction.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2069; Dec. Dig. ☞865.]

2. CRIMINAL LAW ☞1039—APPEAL—RESERVATION OF GROUNDS OF REVIEW— OBJECTIONS.
    Where accused, being evidently willing to take a chance of a favorable verdict, made no objection to the court's direction to the jury to further

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

consider the case after the foreman had stated that they were unable to agree, he could not complain thereof.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2647, 2648; Dec. Dig. ☜1039.]

3. JURY ☜70—SPECIAL VENIRES—DISCRETION OF COURT.

Where only five of the persons summoned under a regular venire appeared, it was largely within the discretion of the trial court whether a special venire should be ordered without insisting upon the attendance of those summoned under the regular venire; and where the court was held in a remote and very sparsely settled portion of Alaska, at a season when transportation to and from that point was about to close, naturally resulting in the departure from that section of many of those who wished to go out for the season, the court did not abuse its discretion by ordering a special venire, especially as accused did not exercise all of his peremptory challenges.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 310–330, 340, 350; Dec. Dig. ☜70.]

4. CRIMINAL LAW ☜304—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.

The Circuit Court of Appeals takes judicial notice of the general topography and climatic conditions of the territory within its jurisdiction, and judicially knows that Iditarod is in a remote and very sparsely settled portion of Alaska, and that in the latter part of September transportation to and from that point is about to close, naturally resulting in the departure from that section of many of those who wish to go out for the season.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 700–717, 2951½; Dec. Dig. ☜304.]

5. CRIMINAL LAW ☜1166½—HARMLESS ERROR—EXCUSING JURORS.

The error, if any, in excusing veniremen on the government's challenge, was harmless, where accused did not exhaust his peremptory challenges.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3114–3123; Dec. Dig. ☜1166½.]

6. CRIMINAL LAW ☜757—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

In a criminal case it was improper for the court to charge that the evidence of Indian witnesses was entitled to as much credit as the evidence of white men, as the jurors were the exclusive judges of the weight to be given the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1772–1785; Dec. Dig. ☜757.]

7. CRIMINAL LAW ☜823—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.

Where the court repeatedly told the jury that they were the exclusive judges of the weight to be given the evidence, and from the instructions as a whole the jury must have understood that, though Indian witnesses were as competent to testify as those of any other nationality, their credibility, as well as that of all other witnesses, was a matter for their exclusive determination, an instruction that the evidence of Indians was entitled to as much credit as that of white men was not reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1995, 3158; Dec. Dig. ☜823.]

8. CRIMINAL LAW ☜351—EVIDENCE—FLIGHT BY ACCUSED.

The flight of a person accused of crime is competent evidence against him.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 776, 778–785, 930–932; Dec. Dig. ☜351.]

9. CRIMINAL LAW ☜778—INSTRUCTIONS—FLIGHT BY ACCUSED.

On a criminal trial, an instruction that the flight of a person suspected of crime was a circumstance to be considered, as tending in some degree

to prove a consciousness of guilt, depending on the motive which prompted the flight, whether a consciousness of guilt and a fear of arrest caused the flight, or whether it was caused from some other and more innocent motive, was not erroneous, as excluding the idea of innocent flight, and failing to tell the jury that flight, though proven, was not necessarily any evidence of the crime.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1852, 1854–1857, 1960, 1967; Dec. Dig. ☜778.]

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska; Fuller, Judge.

Joseph Campbell was convicted of murder in the first degree, and he brings error. Affirmed.

Morton E. Stevens, of Fairbanks, Alaska, and Thomas R. White, of San Francisco, Cal., for plaintiff in error.

James J. Crossley, U. S. Atty., and Louis R. Gillette, Asst. U. S. Atty., both of Fairbanks, Alaska, for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. The plaintiff in error was indicted for and convicted of the crime of murder in the first degree in the killing of one Gus Nelson on the Kuskokwim river, in the territory of Alaska, and within the jurisdiction of the court below. His punishment was fixed by the jury and by the judgment of the court at life imprisonment.

[1, 2] The evidence shows that the deceased was killed near an Indian village, that the evidence against the plaintiff in error was mainly circumstantial, and that much of the testimony against him consisted of that of Eskimo Indians. The court was held at Iditarod. The trial was commenced September 20, 1912, ending with the return and entry of the verdict of the jury 7 days later, after deliberating 48 hours. Three times they returned into court for further instructions; on the third occasion the foreman saying that the jury was unable to agree. The court, however, directed them to consider the case further. The jury having finally returned a verdict of guilty, one of the points urged on behalf of the plaintiff in error for a reversal of the judgment is that such verdict was coerced by the court. There is no basis in the record for such a contention, especially in view of the fact that no objection was made by the defendant to the action of the court in directing the jury to further consider the case. The defendant was evidently then willing to take the chances of a verdict in his favor, and cannot now be heard to complain of the result on that ground.

[3, 4] When the regular venire was called, but five persons summoned thereunder appeared, whereupon a special venire was ordered by the court, the legality of which action is challenged by the plaintiff in error; it being contended that before ordering a special venire the court should have insisted upon a substantial obedience of the regular venire, and that the attendance of only five of those summoned thereunder did not amount to such substantial compliance.

The court takes judicial notice of the general topography and cli-

matic conditions of the territory within its jurisdiction. We know judicially, as well as from the record in the case, that the court below was held in a remote and very sparsely settled portion of the territory of Alaska, and at a time when transportation to and from Iditarod was about to close, naturally resulting in the departure from that section of many of those who wished to go out of it for the season. The issuance of the special venire, in such circumstances, was largely a matter of discretion on the part of the trial court, no abuse of which is discoverable in the record, especially in view of the fact that it appears therefrom that at the time the jury in the case was finally accepted and sworn the defendant was still entitled to the exercise of three peremptory challenges.

[5] The latter fact is also a complete answer to the further contention on the part of the plaintiff in error that the court below erred in excusing certain of the special veniremen, on the challenge of the attorney for the government, based upon their testimony that they either would not convict a white man at all upon the testimony of Indian witnesses, or at least would be exceedingly loth to do so. Even if such ruling, in either instance, could be otherwise held to have been erroneous, no harm appears to have resulted to the defendant therefrom, for the reason that he accepted the jury as finally impaneled with still the right remaining in him to exercise three peremptory challenges.

[6, 7] The contention on behalf of the plaintiff in error that the evidence was insufficient to support the verdict cannot be sustained upon the facts and circumstances disclosed by the record. On the trial, as has been said, the government relied in large measure for the conviction of the defendant upon the testimony of Indian witnesses, and upon the conclusion of the trial the court below, among other things, gave to the jury this instruction:

"In this case Indian witnesses have testified, and you are instructed that the evidence of Indian witnesses is entitled to as much credit as the evidence of white men; and such credibility and weight are determined by the same rules of law, and no witness is to be discredited simply on account of his race or color, as every witness, whether white, dark, black, or yellow, unless otherwise disqualified by statute, is competent to testify. And in law all races stand upon the same plane. And in weighing the evidence of every witness, you have a right to consider his intelligence, his appearance upon the stand, his apparent candor and fairness in giving his testimony, or the want of such candor or fairness, his interest in the result of the trial, his opportunities of seeing and knowing the matters concerning which he testified, the probable or improbable nature of the story he tells, and from these things, together with all the facts and circumstances surrounding the case, as disclosed by the testimony you should determine where the truth of this matter lies. And if you are satisfied and believe from the evidence in this case beyond a reasonable doubt, that the defendant, Joseph Campbell, did, on the 30th day of June, 1911, on the Kuskokwim river, in the territory of Alaska, kill one 'Gus Nelson, as alleged in the indictment, then you should find the defendant guilty as charged in the indictment."

To that instruction the counsel for the defendant duly reserved an exception and assign it as error. Taken alone, it is manifest that the clause, "the evidence of Indian witnesses is entitled to as much credit as the evidence of white men," could not be sustained, for the reason

that the jurors are the exclusive judges of the weight to be given the evidence on behalf of the respective parties. And so the court told the jury in this case over and over again.

The court also instructed the jury, among other things, that:

"In determining the credit you will give to a witness, and the weight and value you will attach to his testimony, you should take into account the conduct and appearance of the witness upon the stand, the interest he has, if any, in the result of the trial, the motive he has in testifying, if any is shown, his relation to or feeling for or against any of the parties in the case, the probability or improbability of the statement of such witness, and the opportunity he had to observe and be informed as to matters respecting which he gave testimony before you, and the inclination he evinced, in your judgment, to speak the truth or otherwise, as to matters within the knowledge of such witness. It is your duty to give to the testimony of each and all of the witnesses appearing before you, such credit as you consider the same justly entitled to receive.

"In this connection you are instructed that evidence is to be estimated, not only by its intrinsic weight, but also according to the evidence which is within the power of one side to produce and the other to contradict; and therefore, if the weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party offering the same, then the evidence so offered should be viewed with distrust."

And its seventeenth instruction was as follows:

"The legal presumption is that witnesses speak the truth, but this is but a prima facie presumption, and may be repelled by the testimony and demeanor of the witness. Under the law, all races stand equal when introduced upon the witness stand, and there is no distinction made as to the presumption that the witness speaks the truth because of race or color. You are, however, the sole judges of the credibility of the witness, and you may and should take into consideration the intelligence of the witness, his understanding of the language used to him, his understanding of the obligation of an oath, his liability to be influenced one way or another by the circumstances surrounding him and his testimony, and, if he speaks through an interpreter, the difficulty of accurate translation, if in your opinion any such difficulty exists. In this connection, you may take into account your knowledge of the difference in the vocabulary of the two races, if such exists."

Of course, the whole of the instructions must be taken and considered together, and, so considered, we think the jury must have understood therefrom that the Indian witnesses were as competent to testify as those of any other nationality, and that their credibility, as well as that of all of the other witnesses, was a matter for the exclusive determination of the jury, in the light of all of the facts and circumstances of the case as disclosed by the evidence.

[8, 9] There was some evidence given tending to show that the plaintiff in error fled from Alaska shortly after the deceased was killed. That the flight of a person accused of the commission of a crime is competent evidence against him is well settled, and an instruction to that effect in substance is not error, although inaccurate in some other respects, which could not have misled the jury. Allen v. United States, 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528. The instruction upon the question of flight here complained of is as follows:

"You are instructed that the flight, if any is proven, of a person suspected of a crime, is a circumstance to be considered as tending in some degree to prove a consciousness of guilt, depending on the motive which prompted the

flight, if any is proven, whether a consciousness of guilt, and a fear of being arrested and brought to trial, caused the flight, if any, or whether it was caused from some other and more innocent motive."

The objection made to the instruction on behalf of the plaintiff in error is that it failed "to instruct the jury that flight, though proven, is not necessarily any evidence of crime, and excludes the idea of innocent flight." We see no merit in the contention, nor in any other point relied upon for a reversal of the judgment.

The judgment is affirmed.